Law Office of Carla G. Ryan
Carla G. Ryan
PMB 196
7090 N. Oracle Ste. 178
Tucson, Arizona 85704
520-297-1113
520-297-1146 (FAX)
ryanlaw1@mindspring.com
State Bar No. 4254

Clay Hernandez
455 West Paseo Redondo
Tucson, Arizona 85701-8254
520-882-8823
520-882-8414 (FAX)
clay@johnsonhouse.psemail.com
State Bar No. 10917

Attorneys for Mr. Greenway

## CAPITAL CASE

## UNITED STATES DISTRICT COURT

### District of Arizona

RICHARD HARLEY GREENWAY,

    Petitioner,

VS.

DORA B. SCHRIRO, et. Al.,

    Respondents.

Civ 98-025-TUC-RCC

REQUEST TO AMEND
HABEAS PETITION AND
REQUEST FOR EVIDENTIARY
HEARING AND REQUEST
FOR THIS COURT TO ORDER
THE STATE FILE

TABLE OF CONTENTS

I.    LEGAL AUTHORITY TO ALLOW LIBERAL AMENDMENTS IN
      HABEAS PROCEEDINGS

      A. THE LAW
      B. REASONS TO AMEND
      C. CONCLUSION

II.   THE STATE HAS WAIVED ITS RIGHT TO OBJECT TO THE
      INTRODUCTION OF THESE CLAIMS BY ITS OWN ACTIONS

      A. THE PROCEDURAL HISTORY
      B. STATE ACTION
      C. THE LAW ON WAIVER
      D. THESE ISSUES SHOULD BE HEARD
      E. INTENTIONAL ACTS BY THE ATTORNEY GENERAL
      F. CONCLUSION

III.  MR. GREENWAY HAS EXHAUSTED THESE CLAIMS IN THE
      STATE COURTS

      A. THE LAW
      B. PCR HISTORY
      C. TECHNICAL EXHAUSTION AND A MISCARRIAGE OF
         JUSTICE
      D. CAUSE AND PREJUDICE
      E. A MISCARRIAGE OF JUSTICE
      F. HARMLESS ERROR DOES NOT APPLY
      G. CONCLUSION

IV.   THESE ISSUES SHOULD NOT BE FOUND TO BE
      PROCEDURALLY BARRED

      A. THE LAW
      B. CAUSE AND PREJUDICEAND MISCARRIAGE OF JUSTICE
      C. OTHER EXCEPTIONS
      D. CONCLUSION

V.    MERITS

A. THIS NEWLY DISCOVERED EVIDENCE WOULD HAVE
   AFFECTED THE SENTENCE IN THIS CASE
B. MR. GREENWAY IS INNOCENT OF THE DEATH PENALTY
   UNDER ARIZONA LAW. THE PCR COURT
   UNCONSTITUTIONALLY APPLIED RULE 32 AND BY SO
   DOING MISAPPLIED UNITED STATES SUPREME COURT LAW
   AND VIOLATED THE EIGHTH AND FOURTEENTH
   AMENDMENTS
C. INEFFECTIVE ASSISTANCE OF COUNSEL
D. *ROPER V. SIMMONS* SHOULD BE APPLIED UNDER THE
   CIRCUMSTANCES OF THIS CASE
E. A POTENTIAL *ATKINS V. VIRGINA* CLAIM IS NOT
   PRECLUDED IN THE FUTURE

VI.   THERE SHOULD NOT BE A PRESUMPTION OF CORRECTNESS

A. THE LAW
B. LAWED REASONING
C. FLAWED FACTS

VII.  REQUEST FOR AN EVIDENTIARY HEARING

VIII. CONCLUSION

CERTIFICATE OF SERVICE

## I.   LEGAL AUTHORITY TO ALLOW LIBERAL AMENDMENTS IN HABEAS PROCEEDINGS

### A. THE LAW

Section 2242 of the Judicial Code provides that habeas corpus applications "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C., section 2242 (2000). Likewise, Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules". Rule 81 (a) (2) of the Federal Rules of Civil Procedure provide that the civil rules "are applicable to proceedings for...habeas corpus." Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court (2005); Fed. R. Civ. P. 81 (a) (2) (2005). The advisory Committee Notes to Habeas Rule 5 point out, in turn, that "under [habeas] Rule 11 the court is given the discretion to incorporate Federal Rules of Civil Procedure when appropriate, so Civil Rule 15 (a) may be used to allow a petitioner to amend his petition...." Advisory Committee Notes to Rule 5 of the Rules Governing Section

2254 Cases in the United States District Courts. (1976 adoption) (discussing Rule 11 and Fed. R Civ. P. 15 (a).)

Taken together, these provisions allow "amendment of the petition ... under the liberal standards of Civil Rule 15." Charles Alan Wright, *Procedure for Habeas Corpus,* 77 F.R.D. 227, 240 (1978) (citing *Holiday v. Johnston,* 313 U.S. 342, 350 (1941); *Jarvis v. Nelson,* 440 F.2d 13 (9th Cir. 1971).); See also, *Mayle v. Felix,* 125 S. Ct. 2562, 2569 (2005). ("[t]he Civil Rule governing amendments, Federal Rule of Civil Procedure 15, [is] made applicable to habeas proceedings by section 2242, Federal Rules of Civil Procedure 81 (a) (2) and Habeas Corpus Rule 11").

This Court on 19 June 2006 gave "leave of court" to amend and for Mr. Greenway to discuss why he should be allowed to amend, why the claims have merit and why these claims should not be precluded. This Court also advised Mr. Greenway that he did not have to file an amended petition, but simply raise the claims and the procedural and merit arguments within the motion to amend. Id.

## B. REASONS TO AMEND

The need to amend arose because new claims became available for the first time after Mr. Greenway filed his federal habeas petition. The new medical evidence, provided to the PCR court during the successor PCR, supported the medical diagnoses of Left Frontal Lobe Disorder and Pervasive Developmental Disorder-Not Otherwise Specified (PDD-NOS). These diagnoses significantly

differ from the 1988/89 personality defect theory presented to the sentencing court in 1988/89.

The new diagnoses were based on several distinct methods. First, the experts held extensive consultations with Mr. Greenway and interviews with his family. See Exhibits to PR and PCR. Second, the experts performed extensive neurological testing on Mr. Greenway and spent an inordinate amount of time analyzing the tests and arriving at their conclusions. Mr. Greenway also had these conclusions re-evaluated by other experts who had not met or interviewed Mr. Greenway in order to avoid any contamination of the conclusions because of the personal contact. See Id. Third, the experts also performed both EEG and qEEG tests. These tests were then read and analyzed by other experts. Id. Fourth, an enormous amount of records were collected and provided to the experts. These records were reviewed, analyzed, and substantiated. Id. And, fifth, actual physical evidence of Mr. Greenway's behavior, his inability to comprehend the results of his decisions and behavior, and his inability to conform to society's expectations of an adult, was gathered and considered before final conclusions were made. Id.

In 1988/89 the experts did not have the wherewithal or the resources to conduct these neurological tests nor the EEG or qEEG. Id. The 88/89 experts were not provided with the documentation and physical evidence that was available to the recent experts. Id. The 88/89 experts were not provided access to family

members. The 88/89 experts were requested only to perform a cursory, drive-by psychological examination. The 88/89 experts were not educated as to what the defense strategy was, if there was any. They were not included in the planning and organization of mitigation evidence. They were not provided with legal definitions and legal standards for proving mitigation. And they were not prepared to testify about the mitigation, as limited as it was, that they had identified. Id.

Mr. Greenway, therefore, contends that these new diagnoses qualify as (1) newly discovered evidence that would significantly change the sentence in this case because of the changes in the law. *Williams v. Taylor,* 529 U.S. 362 (2000); *Wiggins v .Smith,* 539 U.S. 310 (2003); *Tennard v. Dretke,* 542 U.S. 274 (2004); *Texas v. Smith,* 543 U.S. 37 (2004); and *Atkins v. Virginia,* 122 S. Ct. 2242 (2002). (2) They qualify as evidence that Mr. Greenway is innocent of the death penalty under Arizona law. And, (3), they qualify as new evidence to support Mr. Greenway's pending claim that sentencing counsel was ineffective and that the sentencing counsels' deficient performance resulted in an unconstitutional sentence.

Thus, Mr. Greenway is requesting to amend the pending petition with these new facts that became available only after extensive investigation and discovery. These facts were not known prior to the filing of the habeas petition. The failure to investigate and discover these new facts was not due to Mr. Greenway's lack of

diligence but because the state failed to provide resources, a fair and adequate avenue to pursue these new facts, competent representation, and an opportunity to be heard. This resulted in Mr. Greenway being denied due process at all stages of his state proceedings, competent counsel, equal protection of the laws, and not to be sentenced to a cruel and unusual punishment. Moreover, it was the state's objections to Mr. Greenway's attempts to raise issues during the first PCR, and the state's objections to allowing Mr. Greenway's new counsel to re-open and amend the first PCR, that resulted in Mr. Greenway being unable to investigate and discover this significant evidence prior to filing the federal habeas petition.

The unfair and inadequate Rule 32 proceedings that exist in Arizona prevent petitioners, like Mr. Greenway, from being able to adequately challenge trial counsel and the trial proceedings because appointed counsel are often not qualified and are not sufficiently compensated or provided with resources and experts to allow for a full and adequate review. See PCR Amended petition and the exhibits to the Amended petition filed in the PCR record; Exhibits to PR.

Rule 32.1 (h), innocence of the death penalty exception, which was added in 2000, was unconstitutionally applied in this case. There are no standards set forth in the rule or in case law. The test utilized by the PCR court applied too high of a standard, which resulted in this exception to Rule 32 becoming inaccessible to Mr. Greenway and did not meet constitutional and United States Supreme Court law.

*Lockett v. Ohio,* 438 U.S. 274 (1986); *Eddings v. Oklahoma,* 455 U.S. 104 (1982); *Tennard v. Dretke,* 542 U.S. 274 (2004); and *Texas v. Smith,* 543 U.S. 37 (2004).

Mr. Greenway further requests to amend the pending habeas petition to include these new claims involving the mental health evidence, which became available because of the United States Supreme Court's retroactive changes in the law. *Atkins v. Virginia,* 122 S. Ct. 2242 (2002). *Atkins* opened the door for Mr. Greenway to return to state court to litigate the issue of whether he qualified to be exempted from the death penalty because he had earlier been diagnosed with an IQ of 72. This Court allowed Mr. Greenway to return to the state court. This provided Mr. Greenway the first opportunity to investigate and discover these new medical diagnoses. Without the fact investigation undertaken with the successor PCR petition and the evolving technology this new evidence would not have become available. *United States v. Weintraub* 871 F.2d 1257, 1259 (5th Cir. 1989) (amendment permitted after discovery revealed new information); See, e.g. *Collins v. Byrd,* 510 U.S. 1185, 1185-88 (1994) (mem.) (Scalia, J. dissenting from denial of motion to vacate stay) (ordered 6th Cir. to allow amendment in a capital case.)

## C. CONCLUSION

Generally, the courts have freely permitted amendments to add claims when new facts are discovered or where retroactive changes in the law open the door. Rule 2 (c) (1) of the Rules Governing Section 2254 Cases in the United States

District Courts. (2005); See, e.g., *Willis v. Collins,* 989 F.2d 187, 189 (5th Cir. 1993); *Byrd v. Martin,* 754 F.2d 963, 965 (11th Cir. 1985); *Franklin v. Murphy,* 745 F.2d 1221, 1228 & n.9 (9th Cir. 1984) (citing cases); *Espey v. Wainwright,* 734 F.2d 748, 750 (11th Cir. 1984) ("discretion of the district court is not broad enough to permit denial" of leave to amend in new claims when amendment would facilitate simultaneous resolution of all petitioner's claims, unless the claim was known and available to the petitioner at the time of filing the habeas petition); See also, *Sanders v. United States,* 373 U.S. 1, 19 (1963) (amendment to add new claims is the "better course" to avoid successive litigation); *Forman v. Davis,* 371 U.S. 178, 182 (1962) (unexplained denial of amendment motion in a civil case is an abuse of discretion).

This is especially true in capital cases where a petitioner needs to present all claims in the first federal habeas petition to avoid the more restrictive standards that govern successive petitions. *McFarland v. Scott,* 512 U.S. 849, 860 (1994) (O'Connor, J., concurring, in the judgment in part) (successive petition and related doctrines "make it especially important that the first petition adequately set forth all of a state prisoner's colorable claims for relief"). The practice of allowing liberal amendments also reflects the judicial system's interest in avoiding piece-meal litigation of a single petitioner's claims. See, e.g., *Duncan v. Walker,* 533 U.S. 167, 180 (2001); *Rose v. Lundy,* 455 U.S. 509, 520 (1982); *Landis v. North*

*American Co.*299 U.S. 248, 254-55 (1936); See also, *CMAX v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962); *French v .United States,* 416 F.2d 1149 (9th Cir. 1969) (federal courts have consistently requested that criminal proceedings be completed not piece meal, but in an effective, competent manner).

Allowing liberal amendments complies with Rule 15 (a)'s general policy of liberal amendment, which has been incorporated into the habeas corpus practice by Habeas Rule 11.

WHEREFORE, it is respectfully requested that this Court allow Mr. Greenway to amend the pending habeas petition with the following new facts, factual theories and claims.

## II.   THE STATE HAS WAIVED ITS RIGHT TO OBJECT TO THE INTRODUCTION OF THESE CLAIMS BY ITS OWN ACTIONS.

### A. THE PROCEDURAL HISTORY

During the first PCR Mr. Greenway was appointed Sara Kaufman to represent him. He had no choice in the matter. Mr. Greenway did not have the knowledge, experience or the ability to comprehend how Ms. Kaufman's uneducated, non-strategic, totally unsupported decisions would affect his case and his federal review. Ms. Kaufman did not act as competent counsel, did not investigate the case, did not seek the assistance of experts, Ms. Kaufman failed to even draft the PCR petition herself, allowing an investigator to identify the issue and prepare the pleading. Exhibit E, subsection D of the Exhibits filed with the Amended Habeas

Petition and Memorandum Decision filed 22 January 1999. Exhibit F subsection A of the Habeas.

The PCR petition was 8 pages long. It consisted entirely of general statements of law with only one paragraph of specific facts from Mr. Greenway's case. As this Court noted in its order dated 27 July 2000, Dckt. No. __, only an allegation that sentencing counsel were ineffective because they failed "to investigate and present adequate mitigating evidence surrounding Defendant's background, family relationships and the cultural anomalies which impacted his adult life" was raised. R.O.A. II at 54. That counsel erred by <u>intentionally</u> waiving the testimony of Dr. Ronald David, a psychiatrist who had been appointed to assess Petitioner's mental health prior to trial. (Actually he was appointed to do a Rule 11 competency examination. See Exhibit M to the PR.) That counsel failed to properly prepare another mental health expert, Dr. Barry Saslow, who did testify. Id. at 54-55. This issue, along with others, is pending in this Court.

Ms. Kaufman, or her investigator, misrepresented the record. For example, counsel was "bullied" into not calling Dr. David by the prosecutor, Kenneth Peasley. This was not an "intentional" act. The prosecutor objected to the defense calling two psychiatrists. The prosecution was able to manipulate defense counsel because counsel failed to understand or comprehend the law on mitigation, failed to properly investigate and gather documents and failed to provide valuable

evidence to his experts. Counsel also failed to understand that their concerns about the statements undermined significant mitigation. The statements would have provided the support the experts needed to substantiate the personality disorder and immaturity mitigation and would have supported additional neurological testing. It also would have provided information to the sentencing court that would have allowed the court to assess the expert's credibility in an informed environment. See, Exhibits and ROA in the PCR court and in the PR to the Arizona Supreme Court.

Sentencing counsel failed to provide transcripts of the statements that were taken from both Mr. Greenway and his co-counsel, Chris. Lincoln, to Dr. Saslow. Thus, when Dr. Salsow testified the prosecutor objected to Dr. Salsow's testimony and argued that his testimony was not credible because he had not been provided with these documents. Even after Dr. Saslow reviewed the statements, the prosecution argued strongly that the testimony was not credible because Dr. Saslow did not have everything available to him. He testified that he only briefly reviewed the statements in between his first and second day of testimony. Both the sentencing judge and the Arizona Supreme Court agreed with the prosecutor and disregarded or provided little weight to Dr. Saslow's testimony. *State v. Greenway,* 170 Ariz. 155, 823 P.2d 22 (1991).Exhibits to Habeas, Amended Habeas, PCR and PR. At that point in time, Mr. Greenway attempted to amend the pleadings by

himself, because he was so concerned about Ms. Kaufman's behavior. (She failed to timely file the petition and the reply to the state's response to the PCR.) See Id., Exhibit F subsection 11 to the amended habeas.

Then the state objected to the PCR court considering any additional pleadings because the court had filed its order. The state demanded that the PCR court dismiss any pleadings filed by Mr. Greenway or any other representative. Id.

The Arizona Capital Representation Project attempted to intercede after being informed by the Attorney General that they were concerned about Kaufman's representation. Id. The PCR court held that they could not file pleadings on Mr. Greenway's behalf because Ms. Kaufman was the attorney of record. By the time that Ms. Kaufman agreed to withdraw and the ACRP was appointed, the time to file a request to amend or to reconsider had expired. The state once again fought strongly to prevent any additional issues being raised, considered, or to allow evidence to support the IAC issue to be presented. Id., Exhibit F subsections 12 and 14 to Habeas.

The ACRP were allowed to withdraw because they were defunded by Congress and the court appointed Carla Ryan. Ms. Ryan attempted to amend the petition or to re-open the prior proceedings. An extensive list of issues was filed, which had not been presented by Kaufman and, therefore, not considered in the PCR. The PCR court allowed only the issue of Judge Scholl's, the sentencing

judge, bias to be litigated. (That issue is presently pending before this Court.) However, the state and the state courts were put on notice that numerous viable issues had not been presented. The state had an opportunity to argue these issues on their merits. They were responsible for Mr. Greenway not litigating these issues in state court at that time. See Id., Exhibits E, subsection L; Exhibit E, subsection H, Exhibit F, subsection 21; Exhibit E, subsection N to Habeas.

### B. STATE ACTION

Mr. Greenway understands that there is no constitutional right to effective assistance of counsel in PCR. *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Harris v. Vasquez,* 949 F.2d 1497, 1513-14 (9th Cir. 1990). However, there is a right to due process during the PCR. *Bonin v. Vasquez ,* 999 F.2d 425, 429 (9th Cir. 1993). Under the facts of this case, the entire proceedings were so orchestrated that Mr. Greenway received no due process rights. Counsel was so ineffective as to be the equivalent of having no counsel. There was no fair and adequate hearing. The state very effectively, by strongly arguing against amendments and not allowing Mr. Greenway to present obvious issues and evidence or to investigate and discover new evidence, closed the door to federal review and prevented courts from competently reviewing this case and the strong mitigating evidence.

The process undertaken "appears" to be fair and adequate. However, without competent counsel being appointed at every stage, the process is not fair and

adequate. The state has the knowledge, expertise, and capability to use these complicated rules and procedures to effectively prevent a defendant from receiving a fair and adequate hearing in state court.

Since the state has actively and knowingly participated in preventing Mr. Greenway from litigating these issues, the state should now be precluded from arguing that Mr. Greenway can not litigate them now because of a procedural bar. Not only is this significant mitigation, it is evidence that Mr. Greenway is innocent of the death penalty, which constitutes a miscarriage of justice, and supports a finding of prejudice and deficient performance by trial counsel.

## C. THE LAW ON WAIVER

The rules of trial waiver apply with as great or greater force against the state than they do against a defendant. This is how it should be. The state is in a greater position of power and is charged with knowing what the law is. Its agents are trained, educated, and skilled. They are "masters" of federal habeas corpus law and defenses. The doctrine of waiver is long standing in Arizona and under the federal law. *Grace v. Territory,* 12 Ariz. 1, 94 P. 1108 (1908). The courts have recognized an equitable rationale to treat litigants on both sides of a lawsuit the same; therefore, the majority of courts have recognized the need to apply waiver doctrines as strictly against the state or federal government as against habeas corpus petitioners. See, e.g., *Medellin v. Dretke,* 125 S. Ct. 2088, 2098-99, 2100

(2005) (O'Connor, J., dissenting from dismissal of certiorari as improvidently granted, joined by Stevens, Souter, and Breyer, JJ.) (state's failure to "argue below that a treaty-based claim can not support an application for a COA" waived that argument in the Supreme Court).

In *Trest v. Cain*, 522 U.S. 87 (1997), the United States Supreme Court reiterated their holding that a state's failure to argue procedural default results in the waiver of the bar. See also, *Jenkins v. Anderson*, 447 U.S. 231, 234 n.1 (1980) (holding that a state's failure to argue state procedural bar in the lower courts results in waiver of the bar). In *Vang v. Nevals*, 329 F.3d 1069 (9th Cir. 2003), a non-capital case, the Ninth Circuit held that it was error to apply procedural default if the state did not raise it.

### D. THESE ISSUES SHOULD BE HEARD

In this case, the state originally argued that the issues were untimely and, therefore, could not be raised. In the recent PCR the state argued that Mr. Greenway did not fulfill the requirements to be able to raise issues in a successor. The state has pushed Mr. Greenway in a corner by first arguing untimeliness when he was first represented by appointed counsel after having to suffer with Ms. Kaufman until, technically, it was too late to receive a fair and adequate review. This forced Mr. Greenway into a successor position, which includes extremely limited review.

This Court is requested to consider both the equitable and the remedial nature of the writ. As Justice Kennedy has said in a different context, the time may have come in the habeas corpus arena for measures to assure that "[o]ur law [does] not become so caught up in procedural niceties that it fails to sort out simple instances of right from wrong and give some redress for the latter." *ABF Freight System v. NLRB,* 510 U.S. 317, 325 (1994) (Kennedy, J., concurring). The United States Supreme Court has repeatedly held that habeas corpus defenses are not jurisdictional and can be waived, either expressly or by neglect. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Lambrix v. Singletary,* 520 U.S. 518, 523 (1997); *Gray v. Netherland,* 518 U.S. 152, 165-66 (1996). In the AEDPA, Congress changed the waiver standard applicable to the nonexhaustion defense, requiring that waivers to nonexhaustion must be express; however, there is not such a limitation to other defenses. The other defenses that are available can be waived either expressly or by default. *See, generally,* Norman J. Singer, 2A Sutherland's Statutes and Statutory Construction, section 45.12, at 62 (5th ed. 1992). See also, *Lorillard v. Pons,* 434 U.S. 575, 580 (1978) (Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change). Therefore, even if this Court concludes that the state has not waived procedural defenses by its behavior in the state courts,

this Court still has the authority to determine that Mr. Greenway's claims can be heard on their merits

### E. INTENTIONAL ACTS BY THE ATTORNEY GENERAL

In a similar case, but non-capital case, the Illinois courts held that intentional actions taken by the Attorney General in a particular case can interfere and can result in the system failing to address the problems in an orderly and practicable fashion.

> This court has recently had occasion to comment in its [earlier] memorandum opinion and order (the "Opinion"), in more forceful terms than it would have liked, on the stance taken by the Attorney General in this action. That discussion was not at all directed to the underlying merits of the constitutional claims brought by petitioners, as to which the Attorney General certainly can and certainly should advance any and all appropriate substantive arguments with full vigor. Instead this Court spoke in terms of the procedural roadblocks that the Attorney General's representatives have sought to place in the way of addressing those merits. At the time of the Opinion those procedural roadblocks appeared to revive the worst aspects of a period of a half-century earlier, when a predecessor Illinois Attorney General had exercised every effort to close off the access of convicted felons to the courts to assert claims of constitutional deprivations.

*United States ex. rel. Green v. Peters,* 153 F.R.D. 615, 616-17 (N.D. Ill. 1994). That court went on to state that the Attorney General's behavior would not benefit the system because it would not provide a basis for addressing the problem in an orderly fashion. *Id.* at 619.

In this case, the Attorney General's representatives (the present Attorney General assigned to this case was not involved in the state proceedings; however, she is still bound by the record) only argued untimeliness in the prior PCR. They

never addressed the merits or argued procedural default. Therefore, they prevented

there own opportunity to obtain redress in state court and rendered any attempt by

Mr. Greenway to obtain relief futile. *Duckworth v. Serrano,* 454 U.S. 1, 3-4

(1981).

The Ninth Circuit has also opined that exhaustion in state court is not

immutable:

> By ordering a new appeal for Hendricks in the state court [because the
> state appeals court had discharged appointed counsel and refused to substitute new
> appointed counsel, without adequately apprising the petitioner of the dangers and
> disadvantages of self-representation], we now find ourselves in the position of
> having 'unexhausted' the remainder of his constitutional claims. Ordinarily, he
> would have the opportunity again to raise his federal constitutional claims in the
> new state appeal to which he is now entitled. Thus, we could refuse to hear those
> issues at this point and wipe the appellate slate clean. This we incline to do....
> Here, the state has had the first opportunity to examine Hendricks' federal
> constitutional issues as contemplated by section 2254 (b). Thus, the interests of
> comity and federalism have been served. Moreover, were we to give the state a
> second bite at the apple, no doubt we would see Hendricks' federal constitutional
> claims again years hence in a second petition should he lose on his
> appeal....Although such a second petition could not under these circumstances be
> construed as an abuse of the writ, no doubt the process we envision would
> unnecessarily exhaust the petitioner and the resources of the court in the pursuit of
> form without substance. Accordingly, we believe it to be in the interests of justice
> to exercise our authority and to decide these issues now rather than later. Because
> the state's failure to afford counsel to Hendricks on appeal is the cause of the
> situation, it could not be heard to object to object to this procedure.

*Hendricks v. Zant,* 993 F.2d 664 (9th Cir. 1993); See also, *Allen v. Attorney*

*General,* 80 F.3d 573 (1st Cir. 1996). The Third Circuit has also held that the state

will be prevented from arguing exhaustion when they have interfered with a habeas

petitioner's utilization of state remedies. *Mayberry v. Petsock* 821 F.2d 179, 182-84 (3rd Cir. 1987) *cert. den.* 484 U.S. 946.

### F. CONCLUSION

As indicated, in this case, the state was aware of Ms. Kaufman's failure to meet deadlines, failure to present obvious issues, failure to amend the petition, and failure to file a motion to reconsider the summary dismissal. The state even, on its own volition, contacted the ACRP and requested that they get involved and help Mr. Greenway. Then the state interfered with the ACRP being able to correct the situation and present the issues to the state court. Even though the issue is not the failure to exhaust in this case, it is similar in that the state is the reason why these claims were held to be procedurally barred. The state never even attempted to address the merits of the issues raised in the first PCR after Ms. Kaufman withdrew.

Obviously, *Hendricks* and this case are different. *Hendricks* involves an appeal, which demands competent counsel. This case involves a PCR. However, counsel is to be appointed in a capital PCR and due process must be provided. Counsel that was appointed in this case was substantially of less assistance than if Mr. Greenway had represented himself.

WHEREFORE, it is respectfully requested that this Court hear this evidence and consider whether Mr. Greenway's claims violated his federal constitutional

rights to present a defense, to present significant mitigation, to support a finding that counsel was deficient in their performances at sentencing and that their actions resulted in prejudice to Mr. Greenway. This new evidence adds support to these contentions.

On the other hand, Mr. Greenway contends that these issues were properly raised in the successor PCR because they were newly discovered factual evidence. Until the United States Supreme Court in *Atkins* revisited the mental health and retardation issues, Mr. Greenway was foreclosed from doing the necessary investigation and discovery that was prevented by the state in the first PCR. Therefore, this is newly discovered evidence, which can be litigated in a second PCR. Additionally, it is evidence of innocence of death. This claim could not have been raised in the first PCR because it was not an exception to Rule 32 until 2000 and the first PCR was filed and litigated between 1993 and 1996.

## III.   MR. GREENWAY HAS EXHAUSTED THESE CLAIMS IN THE STATE COURTS.

### A. THE LAW

The doctrine of "exhaustion of state remedies" requires that federal habeas corpus claims be adequately presented to the state courts before seeking relief from the federal courts. *Vasquez v. Hillery,* 474 U.S. 254, 257 (1986). The general rule of exhaustion "is not rigid and inflexible". *Granberry v. Green,* 481 U.S. 129, 136 (1987) (quoting *Frisbie v. Collins,* 342 U.S. 519, 522 (1952).)

To exhaust a claim a petitioner must "apprise" the state courts "of the facts and the legal theory upon which the petitioner bases his assertion." *Galtieri v. Wainwright,* 582 F.2d 348, 353 (5th Cir. 1978) (en banc).

## B. PCR HISTORY

Mr. Greenway has litigated, extensively, over three years, the claims he wishes to amend the pending petition with. The PCR court held that the claim of newly discovered evidence was precluded because the sentencing court had the same information available at the time of sentencing and "fully" considered it. The court further held that the new evidence presented was of no consequence because it was irrelevant to mitigation and that Mr. Greenway did not act diligently. The court also held that this claim was not colorable. See Exhibits A & B filed with the PR.

The court ruled that the claim of innocence of the death penalty was precluded and that Mr. Greenway failed to present clear and convincing evidence that the death penalty would not have been imposed even if this evidence was considered. Id.

The PCR court also addressed the factual claim that this evidence would support an IAC claim. The court ruled that there was no change in the law and that the IAC claim was precluded because it had been raised in the first PCR. Id.

The PCR court ruled that *Roper v. Simmons,* 125 S. Ct. 1183 (2005), did not apply, even though *Roper* retroactively changed the law, because Mr. Greenway was 19 years old at the time of the crime . The PCR court refused to consider Mr. Greenway's maturity level. (Mr. Greenway acted like a 10/11 year old at the time of the crime.) Exhibits to Habeas, PCR and PR.

Mr. Greenway presented the claims raised in this motion to the state courts based on the same legal and factual theories that he is relying on in this motion. The PCR court ruled on the merits as well as on procedural default grounds. Therefore, these claims are exhausted and ripe for federal review. Mr. Greenway also raised and provided the Arizona Supreme Court an opportunity to review these claims. Exhibits to PCR and PR

## C. TECHNICAL EXHAUSTION AND A MISCARRIAGE OF JUSTICE

Because the state court found the claims to be precluded if this Court decides the claims raised in this motion were not exhausted, Mr. Greenway will have no avenue available in the state judicial system to exhaust the claims. Therefore, Mr. Greenway has "technically" exhausted these claims. *See, Jackson v. Cupp,* 693 F.2d 867, 869 (9th Cir. 1982) (citing *Engle v. Isaac,* 456 U.S. 107, 125, n. 28 (1982); *Coleman v. Thompson,* 501 U.S. 722, 732 (1991). The United States Supreme Court has opined that colorable claims of innocence supplies evidence of the "miscarriage of justice" exception to a state's defenses and allows this Court to

24

consider the claims on their merits. See, *Smith v. Murray,* 477 U.S. 527, 533-37 (1986); *Kuhlman v. Wilson,* 477 U.S. 436, 454 (1986).

## D. CAUSE AND PREJUDICE

In this case there is cause and prejudice to excuse Mr. Greenway's failure to raise these claims (except for the *Roper* claim) in the earlier petition. *Coleman v. Thompson,* 501 U.S. 722, 731 (1991). As explained above, the state is responsible for preventing Mr. Greenway from raising these issues, investigating mitigation and completing additional discovery during the first PCR. This state interference supports a finding of an external hurdle or a special circumstance, which requires prompt federal intervention in order to assure that Mr. Greenway's constitutional rights are protected. *Frisbie v. Collins,* 342 U.S. 519, 522 (1952). This special circumstance mandates a factual appraisal by this Court as to whether the state has intentionally misused the post conviction proceeding in order to prevent a full and fair review of Mr. Greenway's issues. This is an objective factor, which is external to Mr. Greenway. *Coleman v. Thompson, supra.*

Additionally, as Dr. Thomas Thompson and the other experts presented by Mr. Greenway explained, the neurological tests and the reliability of the EEG and qEEG tests was not available in 1988/89. See exhibits to PCR, amended PCR, and PR. The science of psychiatry had not distinguished between personality and medical disorders. The sciences had not comprehended or understood the effect of

a dysfunctional brain on an individual, like Mr. Greenway, who is unable to foresee the consequences of his actions, who acts as a juvenile (10/11 years old) even though he is over 30, and who can not control his actions. See Exhibits filed with PR, PCR and Amended PCR.

Thus, this information was not available to be presented in the same manner at the time of sentencing. This new understanding of the brain and its functions is significant. It provides a credible explanation for this crime and provides significant evidence that Mr. Greenway should not be executed. It also fits within the United States Supreme Court law regarding significant mitigation that must be considered and given weight to when considering whether to impose a death sentence. *Lockett v. Ohio, supra; Eddings v. Oklahoma, supra; Tennard v. Dretke, supra; and Texas v. Smith, supra.*

Sentencing counsels' agreement to represent a defendant in a capital case, without the experience and knowledge of the law, by itself, constitutes constitutionally ineffective assistance of counsel. *Murray v. Carrier,* 477 U.S. 478, 488 (1986).

The failure of counsel to know what was mitigation, the standard of evidence needed to qualify as significant evidence, and the failure to investigate and provide the evidence discovered to the experts, prejudiced Mr. Greenway. The prosecution was easily able to invalidate and challenge all of the expert testimony

provided by Dr. Saslow because the doctor had not been provided with all of the available documentation that he is required to review to make a competent analysis. The prosecution was also easily provided with the opportunity to bully the defense and convince the defense that they should not call their other expert, Dr. David, because the defense failed to understand mitigation and the difference between mitigation and a defense during the guilt phase. Counsel also failed to understand the difference between using statements during the guilt phase and during the penalty phase. Defense counsel failed to understand that the statements supported his conclusion that additional neurological testing was needed because he felt that significant mitigation was available, even though Dr. David was limited by the lack of advancement in the scientific field of psychology in 1988/89. The end result was that the sentencing judge was never provided with credible evidence to even support the immaturity mitigation or the little evidence of a personality disorder. The sentencing court, the Arizona Supreme Court and the PCR court never "fully" considered any mental health evidence, let alone even conceive of the new diagnoses provided by Dr. Thompson.

The law has changed since Mr. Greenway was sentenced. The United States Supreme Court has now held that a state can not impose a requirement on the defense to prove a "nexus" between the mitigation and the crime. *Tennard v. Dretke,* 542 S. Ct. 274 (2004); *Texas v. Smith,* 543 U.S. 37 (2004). In this case, the

sentencing judge demanded a showing of a causal connection or nexus before considering or giving any significant weight to mental health evidence. The court found that defense did not prove such a nexus; therefore, the sentencing judge failed to consider or give significant weight to Mr. Greenway's mental health evidence. Exhibits to Habeas, PCR, amended PCR, and PR.

This different standard applied by Arizona courts is a misapplication of established United States Supreme Court law. Therefore, Mr. Greenway's mental health evidence, whether it is new or not, should have been re-evaluated under the correct law. There is no possible way to know how a jury would consider and evaluate this evidence without the nexus requirement. Without considering this supporting evidence, the PCR court automatically misapplied federal law. The PCR court also relied on "flawed facts". This reliance made his decisions unreasonable and contrary to federal law.

### E. A MISCARRIAGE OF JUSTICE

The failure to hear these claims constitutes a "fundamental miscarriage of justice" *Sawyer v. Whitley,* 505 U.S. 333 (1992). Mr. Greenway argued strenuously in the state courts and again in this pleading that this mental health evidence and the changes in the law provides clear and convincing evidence that he is innocent of the death penalty. Exhibits to PR and PCR. The "fundamental miscarriage of justice" exception is also known as the "actual innocence" exception. Mr.

Greenway tried to present reliable, credible and scientific evidence that he is not morally culpable, even though legally responsible, for these murders. *Lockett v. Ohio,* 438 U.S. 586 (1986); *Eddings v. Oklahoma,* 455 U.S. 104 (1982); *Tennard v. Dretke,* 542 U.S. 274 (2004); and *Texas v. Smith,* 543 U.S. 37 (2004).

Evidence of moral culpability is mitigating. *Penry v. Lynaugh,* 492 U.S. 302, 322 (1989) (Penry I); *State v. Trostle,* 191 Ariz. 4, 20-21 (1997). The United States Supreme Court has applied a broad relevance standard to mitigating evidence. *See, McKoy v. North Carolina,* 494 U.S. 433, 440-41 (1990). Thus, anything that a reasonable fact finder can reasonably deem to prove or disprove some fact or circumstance has mitigating value. *Tennard v. Dretke,* 124 S. Ct. 2562, 2570 (2004).

Three aggravators were originally found by the sentencing court: pecuniary gain; cruel, heinous or depraved; and multiple homicides. Under federal law, in order to establish innocence of death, a petitioner must demonstrate that no reasonable fact finder would have found an aggravator factor. (Arizona's law is not the same.) In Mr. Greenway's Amended PCR petition he argued that these three aggravators should not be assumed to be automatic based on this new evidence and that a reasonable individual, assigned to determine whether the aggravators exist, could differ. See, Exhibits to PR and PCR.

The Arizona Supreme Court has held that the pecuniary gain factor is "troublesome". *State v. Greene,* 192 Ariz. 431, 967 P.2d 106 (1998). It is not mandatory in every robbery/burglary-homicide case. *State v. Medina,* 193 Ariz. 504, 975 P.2d 94 (1999). In order for this to be an aggravator, the prosecution must prove beyond a reasonable doubt that the expectation of pecuniary gain was the motive, cause, or impetus for the murder and not merely a result of the murder. *State v. Nordstrom,* 206 Ariz. 242, 77 P.3d 40 (2003). This is a highly fact-intensive inquiry requiring the state to prove a connection between the murder and motive through direct or circumstantial evidence. *State v. Ring, (Ring III),* 204 Ariz. 534, 560, 65 P.3d 915, 941 (2003).

The Arizona Supreme Court found that Mr. Greenway armed himself with a gun, went to the house, and entered, even though he was aware that the victims were inside. See, *State v. Greenway,* 170 Ariz. 155, 165, 823 P.2d 22, 32 (1991). The new evidence presented by Dr. Thompson counters the earlier findings because Mr. Greenway did not and does not have the capability to plan, follow through with the plan, or to handle a situation as an individual who does not suffer from left frontal lobe disorder would. This evidence also proves that the motive was not the robbery or burglary, but that, the crimes occurred because Mr. Greenway was immature and suffered from a brain dysfunction. Mr. Greenway

acted like a juvenile. He was upset because the younger victim, Mindy Peters, had laughed at him, made fun of him, and embarrassed him.

This mental health evidence supports a legal and factual conclusion that Mr. Greenway was unable to relish the murder because he did not have the wherewithal to process critical information or conceptualize tasks. He could not comprehend that the victims were suffering. He could not understand the senselessness of his actions or the helplessness of the victims.

The finding of cruelty also comes under suspicion based on Dr. Thompson's medical diagnoses. The cruelty aggravator should be assigned to Mr. Lincoln and not to Mr. Greenway. An analysis of Lincoln's statements, education, employment, and social history indicates, even though he was chronologically younger, that he manipulated Mr. Greenway, manipulated the police, and was the instigator and the driving force behind these murders. Mr. Lincoln was responsible, legally and morally, for any cruelty that occurred. Mr. Greenway, acting like a 10/11 year old, followed Mr. Lincoln and did as he was told to do.

The most troubling aggravator is the double homicide. However, even though it is obvious that two people were murdered, the multiple homicide aggravator is not automatic. The state must establish more than that the jury convicted the defendant of first degree murder and that one or more individuals died around the same time period. *State v. Ring, (Ring III),* 204 Ariz. 534, 560, 65

P.3d 915, 941 (2003). The homicides must be temporally, spatially, and motivationally related, taking place during one continuous course of criminal conduct. *State v. Rogovich,* 188 Ariz. 38, 45, 932 P.2d 794, 801 (1997) (quoting *State v. Ramirez,* 178 Ariz. 116, 130, 871 P.2d 237, 251 (1994).) Dr. Thompson's diagnoses also calls into question whether these murders were motivationally related.

It is very likely that a reasonable individual placed on a jury in this case would find that none of these aggravators were proven beyond a reasonable doubt, based on Lincoln's participation, as well as on the new medical evidence. Mr. Greenway has adequately proven that he is innocent of the death penalty. Therefore, this Court should allow Mr. Greenway to proceed to have his new claims considered on their merits.

## F. HARMLESS ERROR DOES NOT APPLY

The failure to consider these claims can not be justified because they were harmless. That is just not so. Mr. Greenway was sentenced based on inaccurate and limited testimony, based on the testimony of experts who were not prepared and who were not qualified because of counsel's failures. The failure to present and consider all relevant mitigation resulted in a denial of due process and resulted in Mr. Greenway having an unconstitutional sentencing. It resulted in Mr. Greenway receiving a cruel and unusual punishment. Eighth and Fourteenth Amendments.

This new evidence provides the support needed to establish the pending IAC claim and innocence of death. This new evidence demonstrates how the state system failed to protect Mr. Greenway's constitutional rights. And this evidence demonstrates that the sentence in this case demands a careful review.

## G. CONCLUSION

Dismissing these claims would serve "no interest state or federal", would result in burdening the state with unnecessary litigation, and would "constitute a 'hollow exercise in etiquette'". *Nash v. Israel,* 533 F. Supp. 1378, 1380 (E.D. Wis. 1982); *Emmett v. Ricketts,* 397 F. Supp. 1025, 1047 (N.D. Ga. 1975) (quoting *United States ex. rel. Cole v. Follette,* 301 F. Supp. 1025, 1047 (S.D.N.Y. 1969), aff'd., 421 F.2d 952 (2d Cir. 1970).)

The courts must try to avoid piecemeal litigation. See the prior argument, which Mr. Greenway incorporates here. This is an appropriate time to consolidate all of the colorable claims and allow a full and adequate review of the issues on their merits. This is the time to provide what the state courts "appeared" to provide, but actually prevented: a full and fair review. This is the time to, under the circumstances in this case, allow Mr. Greenway due process, a "full" hearing, and a complete review of his evidence.

Since the state courts bypassed their own finding of procedural default and ruled on the merits of the issues; the finding of default is not adequate to prevent review. *Harmon v. Ryan,* 959 F.2d 1457, 1461 (9th Cir. 1992).

WHEREFORE, this Court should make a finding that there is cause and prejudice, that there was a miscarriage of justice in this case, and consider the new issues on their merits.

## IV. THESE ISSUES SHOULD NOT BE FOUND TO BE PROCEDURALLY BARRED

### A. THE LAW

Like exhaustion, a finding of a procedural bar may prevent a court from considering the issues on their merits. Therefore, a decision regarding whether there is a procedural bar needs to be considered before considering the merits. If there is a procedural bar, a petitioner may present reasons why these issues should not be barred. See the AEDPA.

In this case, the state courts indicated that they found the issues raised in the successor PCR, regarding newly discovered evidence and evidence of innocence, to be BOTH procedurally barred and not worthy of relief based on their merits. Exhibits A and B to the PR. Claims will not be procedurally barred in federal court if the state court has reached the merits of the claims. *Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991). See also, *Harris v. Reed,* 489 U.S. 255, 262 (1989).

The same factual theories and the legal theories raised in this motion were

raised and litigated in the state court regarding the procedural issues and on the merits. Extensive arguments and evidence was presented. The state courts considered it all and then concluded that the new evidence would not have changed the sentence because the sentencing court had "fully" considered the same evidence. See exhibits A and B with PR. This conclusion is contrary to established United States Supreme Court law and the factual finding that this evidence was "fully" considered before is unreasonable and not supported by the record.

### B. CAUSE AND PREJUDICE AND MISCARRIAGE OF JUSTICE

Mr. Greenway incorporates his arguments above regarding cause and prejudice and a miscarriage of justice.

As indicated under the exhaustion section of this motion, federal courts will also consider claims that were procedurally barred in the state courts if cause and prejudice or a fundamental miscarriage of justice is established. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 735, n.1 (1991); *Eagle v. Isaac*, 456 U.S. 107, 129 (1982).

### C. OTHER EXCEPTIONS

Even if the state courts had not ruled on the merits, this Court should consider these claims because: (1) Mr. Greenway complied with the state rule, Rule 32 of the Arizona Rules of Criminal Procedure, to raise and have considered newly discovered evidence and evidence of innocence of the death penalty; (2)

Arizona does not enforce these procedural rules in a consistent manner and there are no guidelines provided to assure equal enforcement; (3) Rule 32 is not an adequate and independent state rule that necessarily forecloses federal review; and (4), if a bar is found by this Court, Mr. Greenway, as shown in the exhaustion argument, has proved cause and prejudice. *Schlup v. Delo,* 513 U.S. 298, 314-15, 318-19 (1995); *Mack v. Paris,* 529 U.S. 1104 (2000).

There is no clearly applicable state procedural bar. This was a successor PCR. Mr. Greenway attempted to raise and litigate newly discovered evidence and evidence of innocence of death. Both of these issues are exempted from the state procedural bar set forth in Rule 32.1. The PCR court found, contrary to well established federal law, that this was not newly discovered evidence because it would not have affected the sentencing decision.

The court ruled that the same evidence, which under Rule 32.1 (h) does not have to qualify or meet the criteria for newly discovered evidence, did not prove that Mr. Greenway was innocent of the death penalty. The Arizona rule, unlike the innocence evidence needed in federal court to avoid dismissal in federal habeas if there is a procedurally default, does not require that a petitioner prove that no aggravating factors would have been found. Nevertheless, Mr. Greenway presented arguments that undermine the three aggravating factors found based on this new evidence. Exhibits to PR and PCR.

There are no published opinions, known to Mr. Greenway, discussing what qualifies as evidence of innocence under Rule 32.1 (h) in Arizona. Therefore, the state courts have no established guidelines and this exception has not been regularly applied. The standard, that appears to have been applied in this case, is constitutionally too high. By mandating such a high standard, the state courts violated the Eighth and Fourteenth Amendments regarding cruel and unusual punishment. The state courts also misapplied the mandates of *Lockett v. Ohio,* 438 U.S. 586 (1986); *Eddings v. Oklahoma,* 455 U.S. 104 (1982); *Tennard v. Dretke,* 542 U.S. 274 (2004); and, *Texas v. Smith,* 543 U.S. 37 (2004).

Mr. Greenway made a good faith effort to comply with these state rules. He requested permission to file his own pleadings. He sought help from the ACRP, He complained to the court about Kaufman's lack of representation. Nevertheless, the court, with the approval of the state, did not correct the situation until after the final order had been issued and it was too late to correct the injustice. Mr. Greenway worked diligently to produce the evidence once he was aware of it, which was after the pending Habeas had been filed..

The United States Supreme Court has consistently demanded that mental health evidence be considered and given great weight in capital sentencing decisions. See *Lockett, etc.* This medical diagnoses would have affected the outcome of this case. It is unreasonable to assume that this evidence would not have affected a

reasonable fact finder and resulted in a life sentence. This is especially true since Arizona had previously demanded that mental health evidence had to have a nexus to the crime and that is clearly not the established federal law. Therefore, this death sentence rests on an improper understanding of established United States Supreme court law.

The standard relied on by the PCR court for determining that this evidence was not newly discovered or proof of innocence was an arbitrary standard and violated due process. Mental health evidence is significant evidence that calls for leniency in capital cases. Id. This mental health evidence, coupled with the ineffective claim, demands federal review because Mr. Greenway was denied a fair sentencing hearing, denied the right to present his defense, denied the right to competent counsel and denied due process.

The stringent requirements of Rule 32 frustrates, or has the effect of frustrating, petitioners because the courts will not allow petitioners to object to appointed counsel's representation and refuses to allow a petitioner who is concerned about his counsel to file his own pleadings or obtain other counsel unless the first counsel agrees to withdraw. The stringent requirements and the Attorney General's actions made it, if not impossible, difficult for Mr. Greenway to raise his claims. Therefore, he was left with no other avenue except, once the door was opened, but to file a successor.

This evidence and factual theory supports the pending IAC claim. Even if this Court decides that the newly discovered evidence claim and the innocence of death claim is not cognizable, this evidence should be considered as supporting evidence for the pending IAC claim and as evidence of a miscarriage of justice. This Court's order, dated 27 July 2000, page13, held that Mr. Greenway had not presented or advanced any new reliable evidence that he was innocent of the death penalty because no reasonable fact finder would have found no aggravators. This evidence is new and reliable evidence. This evidence supplies a reasonable doubt regarding all three of the aggravators and provides significant mitigation.

### D. CONCLUSION

WHEREFORE, since the state courts did not only rely on an independent state procedural rule, but also discussed and considered the merits, based on the federal standard for what constitutes significant mitigation, and whether this evidence would have affected the sentence, this Court must consider these issues. Therefore, this Court should allow Mr. Greenway to amend his proceedings, have them considered as individual claims and as supporting evidence for his ineffective claim and for his argument that he was innocent of the death penalty because of a miscarriage of justice.

### V.   MERITS

### A.   THIS NEWLY DISCOVERED EVIDENCE WOULD HAVE AFFECTED THE SENTENCE IN THIS CASE.

The PCR court, and the Arizona Supreme Court, found that the evidence presented by Mr. Greenway was precluded because it would not have had any affect on the sentencing decision. In coming to this conclusion, the state courts misapplied established United States Supreme Court law and relied on flawed facts. Therefore, the state courts came to unreasonable and unsupported conclusions.

This evidence, and its discovery, fits the criteria for newly discovered evidence. The Arizona courts have, by finding that it was not newly discovered evidence, prevented Mr. Greenway from presenting mitigation evidence that should have been considered prior to affirming the death sentence.

The United States Supreme Court has mandated that a capital defendant is entitled to present any relevant mitigating evidence in support of a sentence less than death. *Payne v. Tennessee,* 501 U.S. 808, 822 1991). The Court has also indicated that it applies a broad relevance standard to mitigating evidence. *McKoy v. North Carolina,* 494 U.S. 433, 440-41 (1990). The Court has opined that anything a fact finder could reasonably deem to prove or disapprove some fact or circumstance which has mitigating value should be considered. *Tennard v. Dretke,* 542 U.S. 274 (2004). Any evidence that might serve as a basis for less than death must be considered. *Skipper v. South Carolina,* 476 U.S. 1, 5 (1986). A fact finder must consider all relevant evidence in mitigation. *Lockett v. Ohio,* 438 U.S. 586,

605 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 113 (1982). The Court has also mandated that states must provide competent counsel during trial and appeal in order to assure that a petitioner's right to present all mitigating evidence is protected. *Strickland v. Washington,* 466 U.S. 668 (1984); *Evitts v. Lucey,* 469 U.S. 387 (1985). The Ninth Circuit has also indicated that a petitioner has the right to due process during post conviction proceedings. *Bonin v. Vasquez,* 999 F. 2d 425 (9th Cir. 1993). And the United States Supreme Court has admitted that the PCR process is extremely important, especially in capital cases, in order to provide mandated due process and to assure that the death penalty is applied in a very limited number of cases. *McFarland v. Scott,* 477 U.S. 365, 374 (1994) *(*Blackman, J. dissenting from denial of cert.) (O'Connor, J., concurring in the judgment in part); *Johnson v. United States,* 125 S. Ct. 1571, 1586 (2005) (Kennedy, J. dissenting).

Evidence of moral culpability is mitigating. *Penry v. Lynaugh,* 492 U.S. 302, 322 (1982) *(Penry I).* The United States Supreme Court has said that states can not require that a petitioner prove a nexus or causal connection between mitigating mental health evidence and the crime. *Tennard, supra.*

In this case, the PCR court found that *this evidence,* which is set forth and documented in the exhibits to the PR and PCR, would not have affected the sentencing decision because the original sentencing court had the evidence

available to it and had fully considered it; because Dr. Thompson was not credible and was probably biased; and because this evidence was not significant. The state courts are wrong. They have either ignored United States Supreme Court law or misapplied the law. They have relied on flawed facts and misrepresented the record.

Arizona, in 1988/89, incorrectly, interpreted the established law set forth by the United States Supreme Court regarding what evidence was mitigation and what weight to apply to it. See *Lockett, etc.* The 1988/89 court ruled that the mental health evidence was not credible because they was no causal connection to the crime and because it was insignificant. A finding of immaturity based on a personality defect is not the same as a medical diagnosis that Mr. Greenway was incapable of controlling or understanding his actions because his brain was/is dysfunctional. Exhibits to PR and PCR.

The PCR court adopted this incorrect ruling without holding a hearing and without considering that there is a major difference between an individual who just does not want to comply to society's requirements and an individual who can not comply. The PCR court further failed to consider that defense counsel in 1988/89 failed to investigate and present evidence that could have been presented. The PCR court further failed to understand that the 1988/89 judge was making his decision

based on the incorrect Arizona interpretation of federal law that a causal connection needed to be proved.

Moreover, the PCR court, without allowing testimony in order to determine credibility, opined that Dr. Thomas Thompson's opinions were "particularly suspect" because the PCR court thought Dr. Thompson wanted to impeach the old experts. The record does not support such a finding. Dr. Thompson, and the other experts, emphasized that the 1988/89 experts did not have the information, knowledge, or education to make these medical diagnoses. The PCR court did not allow Dr. Thompson to testify, therefore, it was in no position to evaluate Dr. Thompson's, or the other experts', credibility. The trier of fact should analyze an expert's testimony for bias. The fact finder should not begin with an assumption that an expert witness is biased. E.g., *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627-28 (1944).

Diminished mental capacity or "impairment of brain function" is no longer just a mitigating factor. It can also be a bar to the death penalty. *Atkins v. Virginia*, 122 S. Ct. 2242 (2002). Even if it does not bar the death penalty, it is significant and must be considered as mitigation. A finding that someone is immature is not the equivalent to a finding that someone suffers from a left frontal lobe disorder, especially if, as is in this case, the person was born with this medical condition.

The most important aspect of this new evidence is that it proves that Mr. Greenway had no control. He could not help himself. He was unable to comprehend that his actions could cause such grave dire consequences to the victims, the victims' family, his family and himself. He, because of this medical condition, could not control or understand the situation and the consequences of the situation.

## B. MR. GREENWAY IS INNOCENT OF THE DEATH PENALTY UNDER ARIZONA LAW. THE PCR COURT UNCONSTITUTIONALLY APPLIED RULE 32 AND BY SO DOING MISAPPLIED UNITED STATES SUPREME COURT LAW AND VIOLATED THE EIGHTH AND FOURTEENTH AMENDMENTS.

The PCR court held that Mr. Greenway failed to provide clear and convincing evidence that no reasonable fact finder would have imposed the death sentence on Mr. Greenway. (Rule 32.1 (h)). The court based its decision on its finding that Dr. Thompson only wanted to impeach the prior "experts", rather than relying on the new evidence, and on the false conclusion that the sentencing court had considered this evidence. The court also relied on its faulty analysis that the 1988/89 court applied the proper law.

The arguments and factual evidence set forth in the above section apply here. The difference is that Mr. Greenway did not have to prove that the evidence was newly discovered to be considered. There is no requirement that Mr. Greenway must prove that no reasonable fact finder would have found an

aggravating factor before being considered as evidence of innocence in the state court. (Nevertheless, as indicated above, Mr. Greenway has submitted arguments that question all three of the aggravators found in this case.)

This exception to the preclusion rule outlined in Rule 32 is fairly recent. It was adopted in 2000. Mr. Greenway has not located a published capital case opinion that sets forth the standard to be applied. The state courts, in this case, used such a high standard that Mr. Greenway could not take advantage of this avenue of relief. And the PCR court misapplied established United States Supreme Court law regarding significant and relevant mitigation.

This exception was included in 2000 because there was no other avenue for presenting this type of evidence. *Herrera v. Collins,* 506 U.S. 390 (1993); See comment, to Rule 32.1 (h). If Mr. Greenway is precluded from presenting this evidence as newly discovered, he should, minimally, be allowed to raise it and to have it considered under this exception. The state has not provided any quidelines or indication of what qualifies as innocence of death. However, the United States Supreme Court has made it clear that mental health, especially medical diagnoses, like Left Frontal Lobe Disorder, are significant mitigation. The United States Supreme Court has made it clear that there is a difference between personality and medical diagnosis. The United States Supreme Court has made it clear that all mitigation needs to be presented, that experts must be provided all relevant

documents in order for counsel to make adequate and informed tactical decisions. *Wiggins v. Smith,* 539 U.S. 510 (2003).

Arizona adopted this exception and made it appear to be an avenue of relief; however, the standard used in this case made this a futile and impossible task. The state has simply, one more time, effectively prevented the truth from being considered and weighed in the sentencing process. The state has made it appear there is a corrective system. But, because the court required such a high standard, this avenue of relief has been denied to defendants.

WHEREFORE, this evidence should be considered in a new sentencing. Mr. Greenway should be allowed to present the truth without the state making it appear that he had his opportunity; but, in effect, totally preventing him from having the evidence considered.

Regardless if this Court decides that this evidence was properly precluded, this evidence should be used to support both the miscarriage of justice argument and the pending ineffective assistance of counsel claim.

## C.   INEFFECTIVE ASSISTANCE OF COUNSEL

The PCR court concluded that *Williams v. Taylor,* 529 U.S. 362 (2000), and *Wiggins v. Smith,* 539 U.S. 510 (2003), did not make new law and, therefore, any new ineffective claims were precluded. However, there has not been a clear statement from the United States Supreme Court that these cases have not provided

new law. Moreover, additional and new facts can be considered. to support the pending ineffective claim and Mr. Greenway's contention that there was a miscarriage of justice. These facts support a finding of not only a deficient performance by counsel, but also extreme prejudice to Mr. Greenway. This evidence supports that the death penalty is improper because a reasonable fact finder may not have found the aggravators and would have found this evidence to be significant mitigation.

### D. *ROPER V. SIMMONS* SHOULD BE APPLIED UNDER THE CIRCUMSTANCES OF THIS CASE.

Mr. Greenway moved to amend his PCR petition after the United States Supreme Court filed their opinion in *Roper v. Simmons,* 125 S. Ct. 1183 (2005) (death sentence is precluded for any person18 years or younger).

There was testimony presented in the 1988/89 sentencing that affirmed that Mr. Greenway acted like a 10/11 year old. That, even though he was 19, he did not function as a 19 year old, but he behaved like a young juvenile. Exhibits to Habeas, PR and PCR. Dr. Thompson's recent evaluations explain that Mr. Greenway will never progress pass this maturity age, even though, chronologically he is much older. Id.

If a juvenile can not be executed because he does not have the same capabilities and maturity as an adult; how can a person, who has a dysfunctional brain, which limits his ability to mature and comprehend the true consequences of

his behavior, be executed? Mr. Greenway is a child just like a child that is chronologically under 18.

It is a denial of equal protection and a violation of established United States Supreme Court law, as well as a violation of the Covenant for Civil and Political Rights (ICCPR), to execute an individual that is under 18 years of age. Merely because an individual lives over 18 years does not constitutionally or medically make him an adult. Courts have accepted that chronological age is not the only criteria for age to be considered mitigation. Courts consider maturity and an individual's ability to conform.

Since this is a mixed legal and factual question; this issue should be decided de novo. It is also requested that this Court schedule an evidentiary hearing to allow Mr. Greenway to present medical evidence that establishes his "age".

## E. A POTENTIAL *ATKINS V. VIRGINA* CLAIM IS NOT PRECLUDED IN THE FUTURE.

Mr. Greenway requested permission to return to state court to litigate whether he was mentally retarded under the legal definition expressed by the United States Supreme Court in *Atkins v. Virgina*, 122 S. Ct. 2242 (2002). Dr. Ricardo Weinstein was appointed to evaluate Mr. Greenway pursuant to *Atkins*. Mr. Greenway had an IQ of 72, however, Dr. Weinstein was not able to find evidence sufficient to establish that Mr. Greenway was legally mentally retarded. It is very difficult to turn back the clock and establish some of the legal criteria. Mr. Greenway has not

conceded this argument. He has only indicated to the courts, under the present circumstances, he can not legally prove that he is/was mentally retarded at the time of the crime or before he was 18 years old.

WHEREFORE, Mr. Greenway submits that if in the future evidence of mental retardation can be presented that meets the legal definition, he can raise this issue again.

## VI.   THERE SHOULD NOT BE A PRESUMPTION OF CORRECTNESS

### A. THE LAW

Section 2254 (e) (1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. However, a petitioner can rebut the presumption with clear and convincing evidence. See 28 U.S.C.A., section 2254.

### B. FLAWED REASONING

The state courts made factual findings and legal conclusions. However, the state courts made these findings without an evidentiary hearing and relied on a false understanding of what occurred in the prior proceedings and an incorrect assumption that the Arizona criminal system provides a fair and adequate corrective process. Mr. Greenway's experts were not allowed to testify; therefore, their credibility could not be evaluated. Nevertheless, the state courts held that Dr. Thompson's opinions were suspect and that he was possibly biased because he was trying to impeach prior expert testimony. Exhibits to PR.

The PCR court hesitated and then acknowledged that it had considered the EEG and qEEG evidence as well as the physical, documentary, and human evidence in deciding that this evidence would not have affected the outcome of this sentencing. See Exhibits to PR and ROA from the PCR. Mr. Greenway filed affidavits, articles, and legal arguments in order to demonstrate the significance of this evidence. However, this evidence is very complicated and, the EEG and qEEG testing, even though scientifically established to be reliable evidence, is fairly new. The assistance of expert testimony and explanatory exhibits, such as computer exhibits and a medical explanation would have been extremely helpful.

The reasoning used by the PCR court was unreasonable because the court relied on a mischaracterization of the sentencing courts information and of the law that that court used to decide what weight and significance to apply to the limited evidence it received. As stated above, the sentencing court was provided very little credible evidence and mandated that a nexus be proven. This was wrong and unfair to the defense.

## C. FLAWED FACTS

Without an evidentiary hearing, Mr. Greenway had no avenue to correct the flawed reasoning utilized by the PCR court until after the orders were filed. See Exhibit F to PR Mr. Greenway also did not have the opportunity to explain why

the PCR court was misapplying United States Supreme Court law until after the orders were filed. Id.

In its final order, the PCR court ruled that this evidence was available and "fully" considered by the sentencing court. That is not accurate. See Exhibits to PR. First, the sentencing court in 1988/89 was under the misunderstanding that any mental heath evidence had to have a causal connection to the crime. The United States Supreme Court now has clearly emphasized that Arizona's interpretation of this was wrong. *Tennard.*

Second, a fact finder being told that someone acts immature and laughs inappropriately is not the equivalent of being told that the person suffers from a left front lobe disorder. At the sentencing, Mr. Greenway was diagnosed with a personality disorder, not a medical disorder. Dr. Thompson's more recent diagnosis explains that Mr. Greenway suffered from a brain disorder, which prevented him from comprehending the consequences of his behavior or to control his actions.

Third, the 1988/89 experts were never provided with an opportunity to interview family members or documents. (Such as school records, employment history, statements from friends, etc.) Because of counsels' failure, the courts found Dr. Saslow's testimony not credible and gave no weight to the IQ evidence, the evidence of immaturity or other proffered mitigation.

Fourth, the PCR court relied on the fact that Mr. Greenway was evaluated by the 1988/89 experts. Dr. David was appointed by the court before trial to determine, under Rule 11, whether Mr. Greenway was competent to go to trial. He did the basic "drive-by" evaluation. He did suggest that further neurological testing was necessary; however, he provided no rationale to support additional testing.

Dr. Saslow was appointed after the trial. He was not provided the necessary documents, the opportunity to interview witnesses, or provided with an explanation of what mitigation to even consider. At the time that Dr. Saslow was licensed, 1977, doctorate students were trained under a Fredian method rather than under a medical method. In the 1970's, students were taught to identify and explain behavior as personality disorders. They were not trained and did not have the ability to identify brain dysfunction and medical disorders. See Exhibits to PR and PCR.

Therefore, even though the sentencing court was aware that Mr. Greenway had an IQ of 72, that he was borderline mentally retarded, had a possible and significant emotional disorder, and that his mental age was that of a 10/11year old child, it is incorrect to say that the sentencing court fully considered all of this evidence. As indicated above, the court was limited by Arizona's misinterpretation of the law regarding proving a nexus. The court was limited by the lack of discovery, preparation, and knowledge of the experts. The court was limited by the

failure of counsel to know the law and by the prosecution's ability to scare the defense counsel. This all resulted in limiting the evidence and its significance Therefore, the record does not support that there was a full consideration of mitigating evidence at the sentencing or that the evidence was the same as what Mr. Greenway presented to the PCR court..

The PCR court also ruled that these issues, pertaining to mitigation, were fully addressed in the appeal. That is also incorrect. The direct appeal made several general arguments against the death penalty. Only two arguments dealt directly with Mr. Greenway. The first acknowledged his age and his IQ. The brief argued that these facts should have been considered significant. But the brief provided no real argument or evidence to substantiate this claim. The second was an objection to the court failing to perform a proportionality review because the co-defendant received a life sentence. There was no presentation of additional facts to justify the request.

The first PCR petition also failed to fully present these issues. There was no testimony, no affidavits and no supportive documentation to show the significance of Mr. Greenway's mitigation. The petition was prepared by an investigator, without any discovery or investigation being performed. There was no attempt to even find mitigation to support Mr. Greenway's claim that counsel was ineffective and that counsel's performance prejudiced Mr. Greenway.

The PCR court relied on a misunderstanding of the record in making its conclusions. This resulted in the PCR court's legal conclusions, based on the flawed facts, to be unreasonable. This evidence would have affected the outcome and it was relevant and significant. WHEREFORE,, this evidence is subject to federal court review without the federal court presuming that the state court findings are correct.. 28 U.S.C.A, section 2254 (d); *Wiggins v. Smith,* 539 U.S. 510, 530-31 (2003). This Court can review these claims de novo.

## VII. REQUEST FOR AN EVIDENTIARY HEARING

The United States Supreme Court has emphasized that special importance should be given to capital cases – for society as well as for the defendants – in order to maintain the integrity of the processes by which a state takes a life and to assure that the processes provided are, and not just appear, to be fair. *Gardner v. Florida,* 430 U.S. 349, 360-61 (1977).The Court has also consistently recognized that evidentiary hearings play a central role in enabling capital habeas proceedings to achieve their long-acknowledged goal of assuring both the reality, not just an appearance, of reliability and integrity in the processes leading to criminal judgments. *Ford v. Wainwright,* 477 U.S. 399, 411-12 (1986). Evidentiary hearings are critical if they can shed light on the reliability and establish fairness of the procedures. *Simpongs v. Calderon,* 35 F. 3d 1308 (9th Cir. 1994) cert. den. 513 U.S. 1183 (1995) ("In a capital case, a habeas petitioner who asserts a colorable

claim to relief, and who has never been given the opportunity to develop a factual record on the claim, is entitled to an evidentiary hearing in federal court.")

Mr. Greenway has not had an opportunity to develop his claims. Based on the arguments above, and incorporated herein, Mr. Greenway requests this Court to schedule an evidentiary hearing and allow him his day in court.

## VII.  CONCLUSION

WHEREFORE, Mr. Greenway requests this Court to:

1. Allow him to amend his pending petition with these new arguments;

2. To consider this new evidence not only as new issues, but also as factual theories to support his arguments for cause and prejudice, miscarriage of justice, innocence of death, and to support the pending IAC claim;

3. Find that Mr. Greenway has exhausted these issues and that they can be heard by this Court because the state has waived their right to object or because Mr. Greenway has established reasons to justify this Court's consideration of these issues on their merits;

4. Refuse to apply a presumption of correctness to the PCR court's factual findings;

5. Schedule an evidentiary hearing; and

6. Order the entire state PCR and PR records in order to allow this Court to make a fair and accurate decision.

RESPECTFULLY SUBMITTED this 6th day of September 2006.

s/ Carla G. Ryan

_Carla G. Ryan_
Carla G. Ryan

s/ Clay Hernandez

_Carla G. Ryan_
Clay Hernandez
for Attorneys for Mr. Greenway

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON 7 September 2006, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Donna J. Lam
Assistant Attorney General
400 W. Congress S-315
Tucson, Arizona 85701-6520

_____